UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES KITCHEN, #751036,

        Plaintiff,

v.

UNKNOWN LAROUX, et al.,

        Defendants.
_____/

Case No. 2:23-cv-94

Hon. Robert J. Jonker
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R&R) addresses Defendants' motions for summary judgment based on Plaintiff's failure to exhaust his administrative remedies. (ECF Nos. 11, 22.)

Plaintiff — state prisoner James Kitchen — filed suit pursuant to 42 U.S.C. § 1983 on May 18, 2023. In his verified complaint, Kitchen alleged that while he was incarcerated at the Baraga Correctional Facility (AMF) in Baraga, Michigan, Defendants — Corrections Officer (CO) Laroux, CO Watts, CO Bailey, Registered Nurse (RN) Lewis, and RN Haapala — acted with deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights and retaliated against him in violation of his First Amendment rights. (ECF No. 1, PageID.7-8.) More specifically, Kitchen alleged that in April of 2023, Defendants refused to provide him with an inhaler or otherwise treat his asthma despite his numerous complaints

that he was having trouble breathing. (*Id.*, PageID.3-4.) Kitchen further alleged that after he filed a grievance complaining about the lack of medical treatment, Defendants retaliated against him by continuing to refuse him medical treatment. (*Id.*, PageID.4-6.)

Defendants now move for summary judgment, asserting that Kitchen did not properly exhaust his administrative remedies. (ECF No. 11, 22.) More specifically, Defendants argue that Kitchen's claims should be dismissed because Kitchen failed to pursue any grievances against them through the third and final step of the Michigan Department of Corrections (MDOC) grievance process. (ECF No. 11, PageID.50; ECF No. 23, PageID.97.) In response, Kitchen avers that Defendants made him "apprehensive" about filing additional grievances when they retaliated against him, rendering the grievance process unavailable to him. (ECF No. 25, PageID.133-134; ECF No. 35, PageID.182.) But Defendants point out that Kitchen filed a slew of grievances in early May of 2023. (ECF No. 23, PageID.97.)

The undersigned respectfully recommends that the Court grant Defendants' motions for summary judgment. (ECF Nos. 11, 23.) There are no genuine issues of material fact; Kitchen admits that he filed but one Step I grievance relating to his present claims, and that he chose not to pursue that grievance or any other grievance through the entirety of the grievance process. These efforts to exhaust were plainly insufficient. Furthermore, Kitchen's Prisoner Grievance Summary Report shows that he utilized the grievance process by filing multiple Step I grievances in early May of 2023. Because Kitchen did not make sufficient, affirmative efforts to exhaust

the grievance process, it is the undersigned's opinion that his claims should be dismissed.

## II.  Factual Allegations

The alleged constitutional violations took place over the course of seven days and centered around Kitchen's struggle with asthma-related breathing problems. (ECF No. 1, PageID.3-6.)

Kitchen says that on April 16, 2023, he woke up wheezing due to a "dramatic temperature drop" in his cell. (*Id.*, PageID.3.) Kitchen asked staff[1] for medical kites[2] throughout the day, so that he could request an inhaler from health care, but says that his requests were ignored.

On April 17, 2023, Kitchen awoke to find his breathing difficulties had intensified. (*Id.*) Kitchen says that he informed CO Laroux that he was struggling to breathe, and again requested a medical kite so that he could request an inhaler. Laroux allegedly told Kitchen that he would bring Kitchen a medical kite during his next set of rounds. (*Id.*) But despite Kitchen's repeated reminders, CO Laroux never brought Kitchen a medical kite.

On the same day, Kitchen says that he spoke with a nurse passing out medication.[3] (*Id.*, PageID.4.) Kitchen told the nurse that he was having difficulty

---

[1]   Kitchen's complaint does not specifically identify the officers with whom he spoke on April 16, 2023.
[2]   "Kites" are written communications that prisoners use to communicate with facility staff, including health care.
[3]   Kitchen's complaint does not specifically identify the nurse with whom he spoke on April 17, 2023.

3

breathing and needed an inhaler. The nurse told Kitchen to send in a medical kite. (*Id.*) When Kitchen responded that the staff would not give him a medical kite to submit, the nurse told Kitchen to write a grievance. Kitchen says that he followed the nurse's instructions and submitted a grievance based on the continued denial of medical kites and medical treatment. (*Id.*)

On April 18, 2023, Kitchen says that he again reported his breathing difficulties to CO Laroux. (*Id.*) Kitchen asked Laroux to inform health care, so that health care could get Kitchen an inhaler. Laroux responded by telling Kitchen to send a medical kite. (*Id.*) Kitchen reminded Laroux that he (Kitchen) had been asking for a medical kite, and Laroux allegedly responded by telling Kitchen that he (Laroux) had been busy the day before but would be sure to bring Kitchen a kite later that day. Despite this interaction, Laroux never brought Kitchen a kite. (*Id.*)

Kitchen says that he also spoke with CO Watts on April 18, 2023. Kitchen reported that he was having immense difficulty breathing, and that he had not gotten sleep since April 16, 2023, because of his breathing. (*Id.*) Kitchen explained that he needed a medical kite and an inhaler. But CO Watts allegedly responded: "I'll give you a medical kite when you get a step one response." (*Id.*) CO Watts then ignored Kitchen's requests for kites for the remainder of the day.

On April 19, 2023, Kitchen says that he again spoke with CO Laroux. (*Id.*) Kitchen begged Laroux to help him with his breathing problems, informing Laroux that he had asthma and desperately needed an inhaler. (*Id.*, PageID.5.) Kitchen alleges that CO Laroux responded by stating: "You can't write grievances on staff

4

here and expect things from staff Kitchen." CO Laroux once again neglected to bring Kitchen a medical kite. (*Id.*) The same day, Kitchen says that he asked CO Bailey for a medical kite four times, but CO Bailey similarly ignored his requests.

The next day, April 20, 2023, Kitchen says that he spoke to a slew of staff about his breathing problems. (*Id.*) First, Kitchen spoke with non-defendant Prison Counselor (PC) Stronomor. Kitchen told PC Stronomor that he had not been able to sleep since April 16, 2023, that he was having difficulty breathing, that he needed an inhaler, and that staff had continuously refused to bring him a medical kite. (*Id.*) Stronomor allegedly asked Kitchen why he had not let health care know about his breathing issues when he first arrived at the facility, and Kitchen told Stronomor that health care never came to see him. PC Stronomor told Kitchen that he would look into the matter. (*Id.*)

Later that same day, Kitchen says that his breathing problems escalated to the point that his chest began to hurt. Kitchen says that he got lightheaded and dizzy before ultimately losing consciousness. (*Id.*) When he regained consciousness, Kitchen says that he had a "knot" next to his eye and another knot on his forehead. Kitchen also had a headache, and the side of his mouth was bleeding. When he informed CO Laroux of the incident, Laroux said that he would get Kitchen a medical kite. (*Id.*)

When CO Laroux failed to deliver a medical kite by lunch, Kitchen tried a new tactic. As staff passed out lunch trays, he stuck his arm through the slot in his cell door and demanded to see a nurse. (*Id.*, PageID.5-6.) Not long after, RN Lewis came

5

to see Kitchen. (*Id.*, PageID.6.) Kitchen told Lewis about his asthma, his fainting spell, and his desperate need for an inhaler. He also told Lewis that it had been days since he had slept, and that his head hurt. (*Id.*) According to Kitchen, RN Lewis noted that Kitchen's face was swollen and told him that she would get him some ice. Lewis also told him that she would get him an inhaler. (*Id.*) When Kitchen asked RN Lewis whether he would need to submit a medical kite, she responded that there was "not much medical [could] do without receiving a kite first." She then allegedly stated: "You just got here Mr. Kitchen stop with the grievances." (*Id.*) Kitchen says that he ultimately received two inhalers on April 20, 2023, but no ice or evaluation for injuries related to his fainting spell.

Kitchen says that it was not until April 21, 2023, that he received a medical kite, which he promptly filled out. (*Id.*) That kite was taken from his cell door on April 22, 2023. Ten minutes later, Kitchen says that RN Haapala came to his cell door, and asked to see his face. (*Id.*) After Kitchen showed Haapala his face and head, she allegedly stated: "Your face is swollen good." She then gave Kitchen some pain medication. But when Kitchen asked for further evaluation, RN Haapala responded: "Just take those pills[,] if you need anymore order them from the store[.] [Y]ou should be fine." (*Id.*)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of*

*Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[4] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

---

[4] If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

7

The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion

procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id*. (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id*. at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance

process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W.  The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W.  The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  MDOC Policy Directive 03.02.130 at ¶¶ U, DD.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required.  It is well-established

that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is

11

> to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[5]

## V.   Analysis

Based on the above-listed factual allegations, Kitchen's complaint sets forth the following claims: (1) an Eighth Amendment deliberate indifference claim against Defendants Laroux, Watts, Bailey, Lewis, and Haapala, and (2) a First Amendment retaliation claim against Defendants Laroux, Watts, and Lewis.[6]  Defendants aver that Kitchen did not exhaust any of his claims against them, as he failed to pursue any grievance through Step III of the MDOC's grievance process.  (ECF No. 11, PageID.50; ECF No. 23, PageID.97.)  In response, Kitchen says that he was "apprehensive" about filing grievances due to Defendants' retaliation and grievance-

---

[5]     In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id.* at 596.  For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

[6]     Kitchen's complaint contains no indication that CO Bailey or RN Haapala were aware of Kitchen's grievance, let alone that their actions were motivated by the grievance.  *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523 (6th Cir. 2007) ("To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007)); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (setting forth the three elements of a retaliation claim: (1) protected conduct, (2) adverse action, and (3) retaliatory motive).

12

related remarks, and that the grievance process was therefore unavailable to him.[7] (ECF No. 25, PageID.133-134; ECF No. 35, PageID.182.)

In *Lamb v. Kendrick*, 52 F.4th 286 (6th Cir. 2022), the Sixth Circuit set forth the framework for an exhaustion analysis when the plaintiff alleges that they have been thwarted from exhausting their administrative remedies. There, the Sixth Circuit explained:

> Even if an inmate has evidence to show that an administrative procedure was unavailable, he is not automatically absolved from the PLRA's exhaustion requirement because this Circuit requires inmates to make "affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (quoting *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011)). "When a prisoner makes affirmative efforts to comply but does not

---

[7] The undersigned notes that Kitchen filed his response to Defendant Lewis's motion for summary judgment on September 27, 2023. (ECF No. 25.) On October 24, 2023, Kitchen moved for an extension of time to respond to the motion for summary judgment filed by Defendants Bailey, Haapala, Laroux, and Watts. (ECF No. 29.) The Court granted Kitchen's motion and extended the response deadline to November 30, 2023. (ECF No. 31.) On November 15, 2023, the Court received a document from Kitchen entitled "Affidavit of James Kitchen." (ECF No. 32.) Kitchen concluded that affidavit by stating: "Wherefore Plaintiff/Affiant James E. Kitchen #751036, respectfully request[s] that the Honorable Court grants Plaintiff's affidavit and dismiss defendant's summary judgment motion in its entirety, and grant a date for discovery, and trial, and any other further relief as the Court deems just and equitable." (*Id.*, PageID.164.) Both the Court and Defendants interpreted this affidavit as constituting Kitchen's response, though it contained no argument, and appeared to include requests for discovery. (*See* ECF No. 34 (Defs.' Reply).) But on November 30, 2023, Kitchen mailed an additional document entitled "Plaintiff James E. Kitchen Opposition to Defendants Summary Judgment Motion" to the Court. (ECF No. 35.) That document more clearly set forth Kitchen's arguments in opposition to the motion for summary judgment filed by Defendants Bailey, Haapala, Laroux, and Watts. It also largely overlapped Kitchen's response to Defendant Lewis's motion for summary judgment. Because it is within this Court's discretion to permit additional briefing on dispositive motions, W.D. Mich. LCivR 7.2(c), the undersigned considers ECF No. 35 for the purposes of this Report and Recommendation.

13

succeed, we analyze whether those efforts to exhaust were sufficient under the circumstances." *Id.* (quoting [*Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)]) (internal quotation marks omitted).

*Lamb*, 52 F.4th at 292-93.

Here, the Court need not look further than Kitchen's efforts to exhaust the grievance process; there are no genuine issues of material fact, and those efforts were plainly insufficient.

The grievance documents provided by Defendants establish that Kitchen did not pursue any grievances against Defendants through Step III of the grievance process. (ECF No. 11-1, PageID.54; ECF No. 23-3, PageID.112.) By Kitchen's own account, he filed a Step I grievance asserting that "Correctional Officers" were deliberately indifferent to his medical needs," but never received a response. (ECF No. 1, PageID.6-7.) Kitchen assumed from that lack of response that his grievance was never submitted. (*Id.*) But Kitchen does not allege that he attempted to submit another Step I grievance, or to submit a Step II appeal in accordance with MDOC Policy Directive 03.02.130 at ¶ DD ("A grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response."). Instead, Kitchen says that Defendants retaliated against him based on the Step I grievance he attempted to file by continuing to deny him care. (ECF No. 1, PageID.7.) CO Laroux allegedly told Kitchen that he could not "write grievances on staff [at AMF] and expect something from staff." (*Id.*, PageID.5.) And RN Lewis allegedly stated: "You just got here Mr. Kitchen stop with the grievances." (*Id.*, PageID.6.) Kitchen says that he "wanted to file another grievance" but was

14

"apprehensive to do so due to the neglect of his medical needs that he experienced by numerous staff members and the warning that was given by Nurse Lewis . . . ." (ECF No. 1, PageID.7.)

But while Kitchen says that he was "apprehensive" about utilizing the grievance process, the PLRA's exhaustion requirement gives way to unavailability, not mere apprehension. *See Ross*, 578 U.S. at 638 ("[T]he PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'") Furthermore, Defendants provided Kitchen's Prisoner Grievance Summary Report, shown below, which reflects that Kitchen filed Step I grievances on May 2, 2023, and May 9, 2023 — shortly after the incidents underlying Kitchen's claims.

**Prisoner Grievance Summary Report**

(Case 2:23-cv-00094-RJJ-MV   ECF No. 23-4, PageID.119   Filed 09/25/23   Page 7 of 7)

| Grievance | Number | Name | Facility | Issue | I Recd | I Dec | II Recd | II Dec | III Recd | III Dec |
|---|---|---|---|---|---|---|---|---|---|---|
| 20230538 | 751036 | KITCHEN | AMF | 22B | 5/2/2023 | d | | N | | |
| 20230580 | 751036 | KITCHEN | AMF | 27B | 5/9/2023 | x | 5/30/2023 | x | | |
| 20230581 | 751036 | KITCHEN | AMF | 27B | 5/9/2023 | x | | N | | |
| 20230624 | 751036 | KITCHEN | AMF | 22H | 5/22/2023 | N | | N | | |
| 20230652 | 751036 | KITCHEN | AMF | 09CT | 5/30/2023 | N | | N | | |

(ECF No. 23-4, PageID.119.)

As the undersigned has previously noted, "the undersigned reads *Ross* to require that the intimidation must actually cause the complainant to forgo filing a grievance. If the complainant is not too intimidated to file a grievance, then the grievance system is still available to him or her." *Sango v. Eubanks*, No. 2:20-CV-00160, 2021 WL 2942490 (W.D. Mich. May 3, 2021), *R. & R. adopted*, No. 2:20-CV-

160, 2021 WL 2217372 (W.D. Mich. June 2, 2021), *aff'd sub nom. Sango v. Fleury*, No. 21-2597, 2022 WL 2163519 (6th Cir. May 4, 2022).  Kitchen's Prisoner Grievance Summary Report shows that he was not too intimidated to file grievances, even if he did not ultimately pursue those grievances through Step III of the grievance process.

In the undersigned's opinion, Kitchen's minimal efforts to exhaust the grievance process were plainly insufficient under the circumstances.  The undersigned therefore recommends that the Court grant Defendants' motions for summary judgment based on Kitchen's failure to exhaust his administrative remedies.

## VI.   Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motions for summary judgment.  (ECF Nos. 11, 23.)  There are no genuine issues of material fact; Kitchen admits that he filed but one Step I grievance relating to his present claims, and that he chose not to pursue that grievance or any other grievance through the entirety of the grievance process.  These efforts to exhaust were plainly insufficient.  Furthermore, Kitchen's Prisoner Grievance Summary Report shows that he filed multiple Step I grievances in early May of 2023.  Because Kitchen did not make sufficient, affirmative efforts to exhaust the grievance process, it is the undersigned's opinion that his claims should be dismissed.

If the Court accepts this recommendation, this case will be dismissed.

Dated:   December 6, 2023                                        /s/ *Maarten Vermaat*
                                                                 MAARTEN VERMAAT
                                                                 U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).